IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| NICK BRADLEY MENNICK, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-07-23-S-LMB |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| JOHN HARDISON, Warden of IMSI Prison, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

       This case was reassigned to the undersigned after both parties consented to jurisdiction of a United States Magistrate Judge to enter final orders in this case (Docket Nos. 6 & 38).  District Judge Lodge earlier granted Respondent's Motion for Partial Summary Judgment on Petitioner's second claim, concluding it was procedurally defaulted (Docket Nos. 20 & 27).  Petitioner was given an opportunity to submit a brief on cause and prejudice and miscarriage of justice to excuse the procedural default of this claim.  Petitioner has filed his brief on that issue, as well as several additional motions.  In addition, Respondent has filed a Motion for Summary Judgment on Petitioner's first claim.  The Court has carefully considered the arguments of the parties and reviewed the state court record.  Accordingly, the following Order is entered granting the Motion for Summary Judgment and dismissing Petitioner's Habeas Corpus Petition with prejudice.

MEMORANDUM DECISION AND ORDER 1

# BACKGROUND

Petitioner was convicted of felony aggravated assault by a jury in the Fourth Judicial

District Court in Ada County, Idaho.  The Idaho Court of Appeals described the incident leading

to the conviction as follows:

> Mennick was charged with aggravated battery, Idaho Code § 18-907, as a
> result of a fight.  After he and the victim had been in an altercation one evening,
> Mennick re-appeared at the scene, and the very drunk victim allegedly threatened
> Mennick with a knife.  In response, Mennick smashed the victim's face with a
> beer can, causing him to tumble backward and strike his head.  Mennick then
> rammed the victim's head into the side of the building, rendering him
> unconscious.  After that, Mennick jumped on the victim's chest with both feet.  A
> witness intervened, and paramedics transported the victim to the hospital.
> Medical tests revealed several serious injuries, including bruising to the victim's
> brain, bleeding within and around his brain, rib fractures, and an injury to his
> pancreas.  The victim was moved to another hospital so trauma surgeons could
> monitor his condition.  At trial, a doctor opined that these injuries could have
> been life threatening.

*State's Exhibit B-4*, pp. 1-2.

Petitioner proceeded to jury trial on the charge.  The trial court described the course of

Petitioner's relations with his trial counsel as follows:

> After the petitioner threw his file at the first public defender appointed to
> his case, the petitioner stated he did not want an attorney.  The court later
> appointed another public defender, which the petitioner insisted on firing.  The
> petitioner then proceed to represent himself, and the court appointed the public
> defender to serve as standby counsel.
> Well into the trial, the petitioner decided he did want counsel.

*State's Exhibit C-1, p. 21*.

Petitioner was convicted by the state court jury.  Judgment was entered on August 27,

2004.  Petitioner was sentenced to twelve years fixed, with three years indeterminate.  After

conviction, Petitioner's appointed appellate counsel filed a direct appeal challenging the state

trial court's failure to appoint a medical expert for him, given his indigency status.

MEMORANDUM DECISION AND ORDER 2

In the midst of the direct appeal, Petitioner filed a letter with the Supreme Court of Idaho, expressing dissatisfaction with his appellate attorney, stating that the attorney would not communicate with Petitioner and failed to raise claims Petitioner believed were meritorious. Petitioner asked for a stay of the appeal and appointment of new counsel so that the appellate briefing could be amended. *State's Exhibit D-1.* The Idaho Supreme Court construed the letter as a petition for writ of mandamus and denied relief. *Id.* Based on the briefing provided by appellate counsel, the Idaho Court of Appeals rejected the failure-to-appoint-an-expert claim and affirmed the judgment of conviction on December 1, 2005. *State's Exhibit B-4.* The Idaho Supreme Court denied the petition for review on October 11, 2006. *State's Exhibit B-8.*

On October 20, 2005, Petitioner filed a state post-conviction application, which was dismissed by the district court. *State's Exhibit C-1.* Petitioner did not file an appeal. He filed his federal Habeas Corpus Petition on January 10, 2007.

## PETITIONER'S MOTIONS

**A.    "Motion for Court Order, Status Check, Investigation, and Request Decision on Habeas Corpus" (Docket No. 43)**

Petitioner requests that the Court provide him with information regarding whether his filings sent through the prison mail system have reached the Clerk of Court. Petitioner complains that several of his letters to the Court have not been answered. Generally, the Court considers only requests made in the form of motions. Therefore, whether he has received answers to his letters is not indicative of whether they were received. The particular filing with which he is concerned, a reply of June 20, 2008, was docketed on June 24, 2008. Similarly, other filings Petitioner mentions have been appropriately and timely docketed in his civil rights case, CV08-161-S-BLW, *Mennick v. Smith.* It does not appear that an investigation is

MEMORANDUM DECISION AND ORDER 3

warranted.  **B. "Motion to Expedite Habeas Corpus" (Docket No. 29) & "Motion for Injunction Request Motion to be Expedited" (Docket No. 43)**

Petitioner requests that the Court expedite his case because he believes that the victim is in poor health.  He also asserts the state and federal courts, attorneys, and judges are conspiring against him to keep him illegally imprisoned.  There is nothing in the record to support these assertions. Therefore, Petitioner's request for an expedited ruling is denied.

**C.       "Motion for Investigation" (Docket No. 39)**

Petitioner complains that the Idaho Department of Correction (IDOC) will not provide him with free copies of his legal documents unless he is mailing them to the courts.  He claims he is unable to send them to attorneys or other agencies about his case.  There is no legal requirement that the IDOC provide such free copies of documents to Petitioner.  Rather, the law provides an indigent prisoner with paper, envelopes, and stamps for writing and mailing letters. Petitioner is free to write letters to attorneys and agencies describing his case and grievances.  If the attorneys or agencies are interested in reviewing his case, they can request and pay for copies of his case from the clerk of court.  Accordingly, Petitioner's Motion to expedite and for an injunction is denied.

MEMORANDUM DECISION AND ORDER 4

## REVIEW OF CONDITIONAL GRANT OF SUMMARY DISMISSAL
## ON PROCEDURAL DEFAULT GROUNDS

District Judge Lodge earlier conditionally granted Respondent's Motion for Partial Summary Dismissal on Petitioner's second claim, alleging ineffective assistance of trial and appellate counsel.  Petitioner was permitted an additional opportunity to show cause and prejudice or a miscarriage of justice in order to excuse the procedural default of these claims.

   1.    Prejudice

To show prejudice, a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension."  *United States v. Frady*, 456 U.S. 152, 170 (1982).

As noted above, Petitioner's stand-by counsel had to take over representation of Petitioner in the midst of trial because Petitioner decided during the trial that he no longer wished to represent himself.  Petitioner alleges here that counsel was deficient for failing to obtain the actual CAT scan and x-rays of the victim, arguing that these would show that the victim did not suffer injuries serious enough to warrant a felony "aggravated" battery conviction.

Petitioner has failed to show prejudice, however, because he has not shown that the absence of the actual CAT scan and x-rays harmed his defense. A layperson cannot read a CAT scan and can make little use of x-rays unless they show a very obvious injury.  Rather, a physician reads these items and provides a report that provides the analysis of what the scan or x-ray show.  Petitioner was provided with the victim's medical records and reports before trial (*See Petition*, p. 4, Docket No. 3; *State's Lodging A-1, Petitioner's Motion for Order*, p. 164), and the doctors brought their records and reports to trial *(See State's Lodging A-6, at 130:5-7 &*

MEMORANDUM DECISION AND ORDER 5

270:1-16).

Elsewhere, Petitioner has argued that the emergency room doctors' testimony about the CAT scans and x-rays was fabricated, and "there never [were] any CAT scans and x-rays"; he has also alleged that the entire aggravated battery charge was fraudulent. *Petitioner's Motion to Oppose Respondent's Motion for Summary Judgment*, pp. 2-3  (Docket No. 36).  Petitioner has provided no evidence to support this theory.

Rather, the evidence adduced at trial overwhelming showed that the victim suffered sufficient injuries to meet the standard for an "aggravated" battery: a showing of great bodily injury or permanent disfigurement.  Photographs taken at the scene showed a beaten and bloodied victim. *See State's Lodging A-8.*  Johnny Gayler, an eyewitness, testified how the victim's head was beaten against a metal gutter so hard that the gutter was flattened, and how Petitioner jumped on the victim's sternum with both feet. *State's Lodging A-6*, at 53:1-125 & 54:1-16.  Dr. Richard McDonald, the emergency room doctor at St. Luke's, outlined several specific injuries that were life-threatening, and Dr. Brian Anderson, a trauma surgeon at St. Alphonsus, repeated testimony about the severity of the injuries.  In fact, the only reason Dr. Anderson treated the victim was that Dr. McDonald determined that the victim's injuries were severe enough to warrant sending him to the Treasure Valley's only level-one trauma center. *Id.*, at 145:17-25 & 146:1-12.  Based on a review of the record, Petitioner has not shown that the actual CAT scan and x-rays would have adequately rebutted the foregoing evidence.  To do so, Petitioner would have to show that both doctors-neither of whom has a stake in this matter-were untruthful, and Petitioner could not have shown this by using the CAT scan and x-rays.  Rather, he would have needed to call an expert witness to interpret the tests and reports and rebut the

MEMORANDUM DECISION AND ORDER 6

two doctors' testimony.  As explained below, the facts of this case did not warrant appointment of an expert.

Petitioner further argues that his counsel erred by failing to locate and interview witnesses, file certain motions, or have evidence excluded.  As set forth elsewhere herein, the Court finds and thus concludes that Petitioner has not shown any prejudice arising from these allegations of his attorney's omissions.

Petitioner also contends that the prosecution "hid" an eye-witness named John McGuire from Petitioner.  *See Petitioner's Brief for Cause and Prejudice*, p. 4 (Docket No. 28); *see State's Lodging A-6*, at 119:1-2.  This contention is not supported by a careful review of the record.  Mr. McGuire, a  transient who sometimes appeared at the Boise Rescue Mission, was subpoenaed for trial but failed to appear.  *Id*., 156:1-12.  The trial court issued a warrant for his arrest as a result of Mr. McGuire's failure to appear. *Id*., 163:25 & 164:1-3.  There is no evidence that Mr. McGuire's failure was the result of any act of the prosecution. In addition, the trial court carefully assessed the entirety of the circumstances surrounding the effect of Mr. McGuire's absence on Petitioner's case by listening to a taped interview and applying governing Idaho case law.  The court concluded that "[a]fter listening to all of the tape, it is clear that while Mr. McGuire's testimony is relevant to the facts surrounding this case, it does not add significant new facts which are sufficient in weight to continue the trial."  *Id*., 160:20-24.  Petitioner was given the option of playing the tape for the jury, but Petitioner declined, given that he could not cross-examine Mr. McGuire.  *Id*., 162:17-25 & 163:1-25.

In summary, Petitioner did not bring forward sufficient facts in the state court to support his allegations that he lacked relevant evidence because of attorney error or prosecutorial

MEMORANDUM DECISION AND ORDER 7

misconduct, and he fails to do so here.  Even if he could show that some prejudice resulted, his procedural default cannot be excused because he has failed to show adequate cause, as explained in the next section.

      2.    <u>Cause</u>

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue.  *Murray v. Carrier*,  477 U.S. 478, 488 (1986).  Petitioner has provided little evidence or argument to show there is *cause* to excuse his failure to bring his ineffective assistance claims to the attention of the Idaho Supreme Court.

Petitioner argues that the federal court took so long to decide his motion for default that he did not have the opportunity to apply the stay procedure in his case, which might have allowed him to return to state court to exhaust his claims.  *See Petitioner's Brief for Cause and Prejudice*, p. 4 (Docket No. 28).  However, it is Petitioner who chose to file his actions when and as he did. The Court's heavy caseload demands and policy to adjudicate cases in the order in which they were received did not impede Petitioner's efforts to correctly exhaust his claims in the first place. Procedural default, by definition, is that a petitioner has failed to comply with an "adequate and independent" state rule.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Petitioner's calim that the federal court's delay should excuse his own failure to comply with state rules for the timely filing of his appeals is rejected as without merit.

Petitioner also argues that he is not in default because he brought his ineffective assistance of *trial* counsel claim in his post-conviction petition.  *See State's Exhibit C-1*, at 1-5.  While that may be true, in order to *properly exhaust* his claims, they also need to be appealed through the

MEMORANDUM DECISION AND ORDER 8

level of the Idaho Supreme Court.  Petitioner does not address the fact that he did not appeal the

trial court's dismissal of his post-conviction application.  He has not brought forward an adequate

ground to excuse the failure to appeal.  Specifically, Petitioner's August 9, 2005 letter to the

Idaho Supreme Court, construed as a petition for writ of mandamus, was *not* an attempted appeal

of the post-conviction matter, as the post-conviction petition was not filed until October 20, 2005.

Petitioner also blames his appellate attorney for failing to bring the claim of ineffective

assistance of trial counsel to the Idaho Supreme Court's attention.  Petitioner states he "argued

with his appellate public defender to bring up the issue about discovery (medical records) on

direct appeal, but he refused to do so."  *Petitioner's Demand for Decision on Habeas Corpus*, p. 2

(Docket No. 44).  Petitioner argues that this perceived inaction by his appellate attorney

constitutes the necessary cause.   However, ineffective assistance of counsel cannot serve as cause

for the default of another claim unless the ineffective assistance of counsel claim is not itself

procedurally defaulted or "cause and prejudice" can be shown for the default of the ineffective

assistance. *See Edwards v. Carpenter*, 529 U.S. 446 (2000). Because Petitioner never brought his

claim of ineffective assistance of *appellate* counsel before the Idaho Supreme Court, discussed

directly below, he cannot utilize that claim as cause for the default of his claim of ineffective

assistance of *trial* counsel.

As to the default of Petitioner's claim of ineffective assistance of counsel *on appeal*, it is

clear that he did not bring this claim in his post-conviction application.  *State's Exhibit D-1*, pp.

1-2.   Again, Petitioner has not provided any explanation for his failure to raise that claim before

the Idaho state courts.

MEMORANDUM DECISION AND ORDER 9

Petitioner also alleges that the public defenders also may have been representing the alleged victim while representing Petitioner.  Because Petitioner provides no evidence in the record to support this allegation, it is mere, unsupport speculation.

Because Petitioner has failed to show cause and prejudice for the default of his ineffective assistance of counsel claims, they are subject to dismissal with prejudice unless Petitioner can meet the miscarriage of justice exception.

       2.    <u>Miscarriage of Justice</u>

If a petitioner cannot show cause and prejudice for a defaulted claim, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice."  *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).  A miscarriage of justice  means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent.  *Murray v. Carrier*, 477 U.S. at 496.  To show a miscarriage of justice, Petitioner must make a colorable showing of factual innocence,  *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995).  He must support his allegations of constitutional error with new reliable evidence that was not presented at trial.  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  For example, types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence."  *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996).

Petitioner argues that he asked for and was never given the CAT scans and x-rays of the victim prior to trial, but that if he would have been given these test results, he would have been able to prove his innocence.  For the detailed reasons set forth above, particularly because there is

MEMORANDUM DECISION AND ORDER 10

ample evidence in the record that the victim was seriously injured and that Petitioner caused the injuries, this argument is without merit.

## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner's remaining claim is that the state trial court's denial of his request for expert witness funds due to his indigence violated his Fourteenth Amendment rights under *Ake v. Oklahoma*, 470 U.S. 68 (1985).  Respondent moves for judgment as a matter of law on this claim on the alternative bases that the claim (1) is barred by the doctrine that new rules cannot be applied on habeas review, set forth in *Teague v. Lane*, 489 U.S. 288 (1989); (2) fails to meet the standard for relief on the merits under section 2254(b)(1) (an unreasonable application of the law); and (3) fails to meet the standard for relief on the merits under section 2254(b)(2) (an unreasonable determination of the facts in light of the evidence).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure.  Rule 11, Rules Governing Section 2254 Cases.  Accordingly, summary judgment motions are appropriate in habeas corpus proceedings where there are no genuine issues of material fact based on the record before the Court and the moving party is entitled to judgment as a matter of law.  *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977).

MEMORANDUM DECISION AND ORDER 11

A.      *Teague* Argument

     1.      <u>Law</u>

When a *Teague* defense is raised, the Court is required to decide that issue before

addressing the merits of the claim.  *Horn v. Banks*, 536 U.S. 266 (2002).  *Teague* applies only to

new rules of criminal procedure.  Decisions of "criminal procedure" are those decisions that

implicate how the criminal trial process functions.  Decisions of "substantive criminal law," by

contrast, are those that reach beyond issues of procedural function and address the meaning,

scope, and application of substantive criminal statutes. *Bousley v. U.S.*, 523 U.S. 614, 620 (1998).

For *Teague* purposes, a new rule is one of "procedure" if it impacts the operation of the criminal

trial process, and a new rule is one of "substance" if it alters the scope or modifies the

applicability of a substantive criminal statute. *Bousley*, 523 U.S. at 620.

To determine whether a claim is barred by *Teague*'s non-retroactivity principles, a

reviewing court engages in a three-step process.  First, the court must ascertain the date on which

the defendant's conviction and sentence became final.  *Caspari v. Bohen*, 510 U.S. 383, 390

(1994).  Second, the court must survey "the legal landscape as it then existed" to determine

whether existing precedent compelled a finding that the rule at issue "was required by the

Constitution."  *Lambrix v. Singletary*, 520 U.S. 518, 527 (1997).

If the rule is considered "new," the court must proceed to the third step and determine

whether either of the two announced exceptions applies.  *Teague*, 489 U.S. at 307.  The

presumption against retroactivity is overcome only if the new rule prohibits "a certain category of

punishment for a class of defendants because of their status or offense," *Penry v. Lynaugh*, 492

U.S. 302, 330 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002), or

MEMORANDUM DECISION AND ORDER 12

presents a new "watershed rule of criminal procedure" that enhances accuracy and alters our understanding of bedrock procedural elements essential to the fairness of a particular conviction. *Teague*, 489 U.S. at 311.

      2.    <u>Discussion and Analysis</u>

Petitioner's state court conviction became final on January 9, 2007, ninety days after the Idaho Supreme Court denied his petition for review. *See State's Lodgings* B-7 & B-8. Petitioner must show that *Ake v. Oklahoma*, 470 U.S. 68 (1985), or subsequent United States Supreme Court cases following *Ake* that existed in 2007, compel the conclusion that the Constitution requires appointment of a medical expert for an indigent defendant to challenge the extent of the victim's injuries.

Many federal courts have decided that the Constitution and existing Supreme Court precedent does *not* compel such a conclusion. In *Jackson v. Ylst*, 921 F.2d 882, 885-86 (9th Cir. 1990), the Ninth Circuit held that an *Ake* claim based on an indigent defendant's request to appoint an expert on eyewitness identification would be a "new rule" barred by *Teague* because *Ake* did not address such a right, neither could the parties point to "any authority that holds that the federal constitution requires the appointment of such an expert." *Id*. at 886. The *Jackson* court also held that the new rule sought did not fall under one of the Teague exceptions. *Id*. Other courts rejecting similar *Ake* claims on *Teague* grounds have relied on *Caldwell v. Mississippi*, 472 U.S. 320 (1985), where the Supreme Court declined to extend *Ake*'s holding to the appointment of a criminal investigator, fingerprint expert, and ballistics expert, stating "we have no need to determine as a matter of federal constitutional law what if any showing would have entitled a defendant to assistance of the type sought here." *Id*. at 323 n.1. *See Weeks v.*

MEMORANDUM DECISION AND ORDER 13

*Angelone*, 176 F.3d 249, 263-66 (4th Cir. 1999); *Apelt v. Schriro*, 2007 WL 2288109, at *12 (D. Ariz. 2007).

The undersigned federal judge agrees with the legal authorities cited directly above and concludes that (1) the United States Supreme Court has not extended *Ake* beyond appointment of a psychiatrist to answer the question of defendant competency, (2) that to broaden that application to requiring trial courts to appoint experts to help defendants support other defenses is beyond the scope of *Ake*, and (3) that the proposed "new rule" is barred by *Teague*. The Court also concludes that Petitioner's proposed extension of the law does not fit into one of the exceptions to *Teague*. This conclusion is further supported by *Gretzler v. Stewart*, 112 F.3d 992, 999-1000 (9th Cir. 1997), where the Ninth Circuit determined that the two exceptions do not apply to *Ake* claims. Petitioner's proposed rule does not prohibit "a certain category of punishment for a class of defendants because of their status or offense," *Penry v. Lynaugh*, 492 U.S. at 330, nor does it present a new "watershed rule of criminal procedure" that would enhance accuracy and alter our understanding of bedrock procedural elements essential to the fairness of a particular conviction, *Teague*, 489 U.S. at 311. As a result, Petitioner's claim is barred by *Teague*.

**B.     Merits Argument**

       1.     <u>Law</u>

Petitioner's case was filed after April 24, 1996, making it subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). In order to obtain federal habeas corpus relief from a state court judgment under AEDPA, the petitioner must show that the state court's adjudication of the merits of his federal claim either:

       1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

MEMORANDUM DECISION AND ORDER 14

Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

To prevail under § 2254(d)(1), a petitioner must show that the state court was "wrong as a matter of law," in that it "applie[d] a legal rule that contradicts our prior holdings" or that it "reache[d] a different result from one of our cases despite confronting indistinguishable facts." *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000) (citing *Williams v. Taylor*, 529 U.S. 362 (2000)). Or, a petitioner can prevail by showing that the state court was "[objectively] unreasonable in applying the governing legal principle to the facts of the case," or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." *Id*. at 166. However, a petitioner cannot prevail under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.

Under AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2).

Under the broad legal principles governing fair trials, the United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment "require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v.*

MEMORANDUM DECISION AND ORDER 15

*Trombetta*, 467 U.S. 479, 485 (1984).  The State must provide a defendant with the "basic tools of

an adequate defense."  *Britt v. North Carolina*, 404 U.S. 226, 227 (1971).  However, indigent

defendants are not entitled to unlimited defense tools.  *See Ross v. Moffitt*, 417 U.S. 600, 616

(1974) (holding that Fourteenth Amendment does not guarantee the right to counsel on

discretionary appeals, and acknowledging that indigent defendants are "somewhat handicapped in

comparison with a wealthy defendant who has counsel assisting him in every conceivable manner

at every stage of the proceeding").

In *U.S. v. Scheffer*, 523 U.S. 303 (1998), the Court explained the relationship between the

constitutional requirements of a fair trial and state-created limitations on evidence:

> A defendant's right to present relevant evidence is not unlimited, but rather
> is subject to reasonable restrictions. A defendant's interest in presenting such
> evidence may thus "bow to accommodate other legitimate interests in the criminal
> trial process." As a result, state and federal rulemakers have broad latitude under
> the Constitution to establish rules excluding evidence from criminal trials. Such
> rules do not abridge an accused's right to present a defense so long as they are not
> "arbitrary" or "disproportionate to the purposes they are designed to serve."
> Moreover, we have found the exclusion of evidence to be unconstitutionally
> arbitrary or disproportionate only where it has infringed upon a weighty interest of
> the accused.

*Id*. at 308 (internal citations omitted).

2.   Discussion and Analysis

The Idaho Court of Appeals declined to resolve the issue of whether *Ake* applied to cases

beyond psychiatric experts needed to support an insanity defense.  *State's Lodging B-4*, at 3.

Rather, it held that the state district court properly denied Petitioner's request for appointment of a

medical expert even if the *Ake* standard applied:

> One of the prongs of the *Ake* test requires a court to examine the probable
> value of the expert assistance and the risk of error in the trial outcome if the
> assistance is not offered.  In this case, Mennick argues that the aid of a medical

MEMORANDUM DECISION AND ORDER 16

expert was necessary for his defense against the State's allegation that the battery was aggravated, and thus a felony, because Mennick had inflicted lacerations and massive head or brain injury, causing great bodily harm or permanent disfigurement to the victim.  In our view, however, there would have been little value in an expert's services and virtually no risk of error in the outcome of Mennick's trial resulting from the denial of his request.

*Id*.

The Idaho Court of Appeals went on to reason and conclude:

It is extremely unlikely that an independent medical expert could have helped Mennick rebut the objective evidence that the victim suffered brain trauma or the straightforward medical diagnoses of the victim's treating physicians.  Thus, there was little value in appointing a pathologist and a nearly non-existent risk of error in denying one.  Without weight on this prong of the *Ake* test, the defendant's interest in receiving an expert is insufficient to outweigh the State's interest in denying one.

*Id*. at 4.

Petitioner argues that the state court decision denied him the right to the basic tools necessary to meaningfully participate in the adversarial process.  In order to prevail he must show that the state court's decision to deny him an expert witness denied him basic tools necessary to his defense, that the decision was arbitrary or disproportionate to the purposes the underlying rule was designed to serve, and that his interest in the expert witness was "weighty."

The record reflects that Petitioner was provided with court appointed counsel, that he was then permitted to represent himself according to his wishes with stand-by counsel present at trial to assist him, and that counsel was re-appointed to represent him in the midst of the trial when Petitioner decided he no longer wished to represent himself.  Petitioner undertook discovery, and was provided with adequate disclosures from the prosecution.  Petitioner's witnesses were subpoenaed to trial, and he was afforded examination and cross-examination rights.  Petitioner was permitted to testify and introduce exhibits.  This is not to say that Petitioner was provided with the

MEMORANDUM DECISION AND ORDER 17

tools for a perfect defense–an eyewitness did not comply with a subpoena, and the actual test results of the victim's x-rays and CAT scans were never provided to Petitioner.  However, based on a careful review of the entire record, this Court concludes that Petitioner had access to constitutionally adequate "basic tools" necessary for preparation and presentation of his defense.

The decision to deny the request for appointment of a medical expert was not arbitrary, or disproportionate to the purposes the underlying rule was designed to serve, given that two independent medical doctors from two emergency rooms shared the same opinion and assessment of the victim's injuries resulting from Petitioner's acts.  The Idaho Court of Appeals weighed the interest of Petitioner and the state, and determined that, based on the facts, Petitioner's interest did not outweigh the state's.  Petitioner's interest in the expert witness was not "weighty" because it did not bear on his interest in offering his own testimony, or "an interest in using the only available means of addressing a relevant issue." *Ferensic v. Birkett*, 501 F.3d 469 (6th Cir. 2007) (relying on *Scheffer*).[1]  As a result, the the state court decision was not contrary to federal law as determined by the United States Supreme Court, and no relief is warranted under § 2254(d)(1).

Addressing the factual basis of the state court decision, Petitioner argues that the Idaho Court of Appeals misunderstood his request--he did not ask for a "pathologist" to determine whether the victim had brain damage.  "Pathology" is broadly defined as the "scientific study of

---

[1] In *Ferensic*, the court noted that *Scheffer* specifically relied on several United States Supreme Court cases to define the term "weighty," including "*Chambers v. Mississippi*, 410 U.S. 284, 300-02, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (defendant forbidden to offer evidence that another person had confessed on several different occasions to the crime of which he stood accused); and *Washington v. Texas*, 388 U.S. 14, 22, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (defendant forbidden to offer exculpatory testimony from a witness because the witness was an accomplice in the crime and had not been acquitted)."  501 F.3d at 487-88.

MEMORANDUM DECISION AND ORDER 18

the nature of diseases and its causes, processes, development, and consequences." *The American Heritage Dictionary of the English Language* (4th Ed. 2000).  It is clear from this Court's review of the record that the Idaho Court of Appeals understood Petitioner's request to be that he needed an expert witness to review the victim's medical records on the issue of whether Petitioner's actions caused the victim a serious injury or permanent disability.  This Court further concludes that, upon a review of the entire record, the state court decision was not based on an unreasonable determination of the facts in light of the evidence presented, and that the relief Petitioner sought is unwarranted on Petitioner's factual claims under § 2254(d)(2).

**C.     Conclusion**

Petitioner has failed to show that his claim is not barred by *Teague*, or that it falls under one of the *Teague* exceptions that would permit the federal court to address and adjudicate his claim.  Alternatively, Petitioner's case fails under general fair trial principles set forth by the United States Supreme Court, and relief on the merits is not warranted under § 2254(d)(1) or (2).  Accordingly, Petitioner is not entitled to habeas corpus relief, and his Petition is denied and dismissed with prejudice.

**D.     Instructions for Appeal**

Before a petitioner may appeal from the dismissal of a 28 U.S.C. § 2254 petition, he must first obtain a certificate of appealability by filing a request for a certificate of appealability with the federal district court.  28 U.S.C. § 2253(c).  Until a certificate of appealability has been issued, an appellate court lacks jurisdiction to rule on the merits of an appeal.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  A federal district court will not issue a certificate of appealability absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner

MEMORANDUM DECISION AND ORDER 19

satisfies this standard by demonstrating that reasonable jurists would find debatable both the merits

of the constitutional claims and any dispositive procedural rulings by the district court.  *Miller-El*

*v. Cockrell*, 537 at 336 (2003).

Petitioner's current Motion for Certificate of Appealability and Notice of Appeal, filed

before Judgment was entered in this case, are premature and will not be addressed.  Petitioner may

refile these motions, and submit a new Notice of Appeal, particularly addressing the reasons for

denial and dismissal of Petitioner's claims as set forth in this Order, once Judgment is entered.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A.    Respondent's Motion for Summary Judgment (Docket No. 32) is GRANTED.  All
      of Petitioner's claims are dismissed with prejudice.

B.    Petitioner's Motion to Expedite Habeas Corpus (Docket No. 29) is DENIED.

C.    Petitioner's Motion for Investigation (Docket No. 39) is DENIED.

D.    Petitioner' Motion for Injunction Request (Docket No. 42) is DENIED.

E.    Petitioner's Motion for Court Order, Status Check, Investigation (Docket No. 43) is
      DENIED.

F.    Petitioner's Motion for Certificate of Appealability (Docket No. 51) is DENIED as

. . .

. . .

. . .

MEMORANDUM DECISION AND ORDER 20

premature and his Notice of Appeal (Docket No. 52) is STRICKEN as premature.



DATED:  **January 26, 2009**.

Honorable Larry M. Boyle
U. S. Magistrate Judge

MEMORANDUM DECISION AND ORDER 21